UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE DENE McSPARREN, | No. 2:12-cv-0357 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act ("the Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act. The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and will deny defendant's motion for summary judgment.

PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB and SSI on December 15, 2008, alleging disability beginning October 3, 2008. Administrative Record ("AR") 121-31. Both applications were initially denied on April 16, 2009, and again upon reconsideration on September 21, 2009. AR 53-59. On November 9, 2010, a hearing was held before administrative law judge ("ALJ") Daniel G. Heely. AR 22-52. Plaintiff appeared without attorney representation at the hearing, at

which she, her brother, and a vocational expert ("VE") testified. Id. In a decision dated December 21, 2010, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) of the Act as to her DIB claim and not disabled under section 1614(a)(3)(A) of the Act as to her SSI claim.[1] AR 8-16. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. This requires determination of whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

since October 3, 2008, the alleged onset date.

3. The claimant has the following severe impairments: Degenerative disc disease and depression.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light work as defined 20 CFR 404.1567(a) and 416.967(b). She is able to work at jobs involving simple routine tasks, while being able to sit, stand and/or walk about 6 hours each during an 8-hour workday, and able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can never climb ladders, ropes or scaffolds.

6. The claimant is unable to perform past relevant work

7. The claimant was born on July 28, 1962 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 3, 2008, through the date of this decision.

AR 10-16.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on December 29, 2011, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4.

## FACTUAL BACKGROUND

Born on July 28, 1962, plaintiff was 46 years old on the alleged onset date of disability, AR 121, and 48 years old at the time of the administrative hearing, see AR 8. Plaintiff is a high

1  school graduate and last worked as a certified nursing assistant. AR 35. In April 2006, plaintiff
2  fell on a slippery floor while at work. AR 36. In March 2008, plaintiff was involved in a motor
3  vehicle accident. AR 624. Plaintiff alleges disability beginning on October 3, 2008. AR 121.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

Plaintiff argues that the ALJ erred by (a) failing to articulate specific and legitimate reasons for not crediting the opinion of a treating physician, Dr. Paul E. Kaplan, and (b) failing to articulate clear and convincing reasons for discrediting plaintiff's testimony and failing to articulate any reasons for discrediting the testimony of plaintiff's brother.

A.   Opinion of Treating Physician, Dr. Paul E. Kaplan

Plaintiff first argues that the ALJ erred in rejecting the opinion of treating physician Dr. Paul E. Kaplan as to plaintiff's upper extremity limitations. The Commissioner, in turn, argues

4

that substantial evidence supports the ALJ's evaluation of the medical evidence.

    1.    <u>The Relevant Medical Record</u>

        a.    <u>Overview of Plaintiff's Medical Records</u>

In April 2006, plaintiff fell on a slippery floor while at work. After the fall, plaintiff complained of lower back pain and received physical therapy treatment in 2006 and 2008, AR 255-72, 313-18; obtained an MRI of her lumbar spine on June 7, 2006, which revealed mild disk disease, AR 272; received treatment at Kaiser Permanente from October 2007 to December 2008 for lower back and neck pain, AR 276-418; and received acupuncture treatment, AR 350.[2]

On March 14, 2008, plaintiff was involved in a motor vehicle accident, which resulted in pain in her neck and lower back, radiating to both shoulders and to her right lower extremities. AR 288. Soon after the accident, plaintiff complained of pain radiating to her fingers and extreme tenderness to palpation in her neck muscles. AR 292, 298, 304, 308. An April 15, 2008 physical exam revealed 5/5 strength throughout all extremities with intact sensation to light touch and pinprick in all extremities except decreased pinprick entire left arm. AR 305. The examining doctor noted that plaintiff's "numbness of the left arm is isolated and may be secondary to her pain issues which are still significant." Id.

        b.    <u>Opinion of Treating Physician Dr. Paul Kaplan</u>

            i.    <u>2008 Reports</u>

Dr. Kaplan examined plaintiff on multiple occasions in the context of a worker's compensation claim. He first examined plaintiff on May 17, 2008, the results of which are included in a June 14, 2008 Qualified Medical Evaluation report. <u>See</u> AR 621-27. That report focused on plaintiff's back and neck injuries following the April 25, 2006 workplace fall and the March 13, 2008 motor vehicle accident. Following testing, Dr. Kaplan observed abnormal findings related primarily to plaintiff's back and determined that she suffers from a cauda spinal lesion with bilateral polyradiculopathy. AR 625. Dr. Kaplan diagnosed plaintiff with

---

[2] Although irrelevant to the analysis herein, plaintiff also complained of and received treatment for depression.

5

lumbosacral disc syndrome, with associated strain / sprain disorder and cauda equina syndrome[3]. Id. 626. He also determined that plaintiff needs to have a weight-bearing MRI of her lumbar spine and stated his intent to reexamine her afterward. Id. 626-27.

On November 22, 2008, Dr. Kaplan completed a Qualified or Agreed Medical Evaluator's Findings Summary Form, in which he noted that plaintiff is permanently disabled, that work caused or contributed to the injury, that her condition is stable and not likely to improve, and that the plaintiff could not return to her usual job. AR 486. Dr. Kaplan's diagnosis was "LS spine disc syndrome." Id.

On December 18, 2008, Dr. Kaplan reevaluated plaintiff following review of his June 14, 2008 report and a September 18, 2008 MRI report. AR 480-84. A full neuromusculoskeletal evaluation revealed intact fine and gross motor coordination, an antalgic gait, and acute and chronic pain. Id. 481. Dr. Kaplan determined that there is evidence consistent with spinal nerve root entrapment, which is bilateral and as one would expect in a cauda equine type lesion. Id. Dr. Kaplan diagnosed plaintiff with lumbosacral disc syndrome, with associated strain / sprain disorder and cauda equine syndrome. Id. 482. He determined that plaintiff's injuries are permanent and stationary as of November 22, 2008. Id. He noted that plaintiff has constant moderate pain, that she needs to see a physical therapist at least four to six times a year, and that she is not a good candidate for either invasive or surgical procedure due to the number of abnormal discs on MRI. Id. 484.

## ii. 2010 Reports

Dr. Kaplan reevaluated plaintiff on April 23, 2010, and discussed his findings in a May 8, 2010 Qualified Medical Reevaluation report. AR 608-14. Before the examination, Dr. Kaplan reviewed numerous reports, most of which focused on plaintiff's lower back area. See id. 609-10. Dr. Kaplan also reviewed plaintiff's questionnaires regarding Activities of Daily Living, dated

---

[3] "Cauda equine refers to the collection of spinal roots that descend from the lower part of the spinal cord and occupy the vertebral canal below the cord and their appearance resembles the tail of a horse." Pl.'s Mot. Summ. J. at 4 n.11 (citing Dorland's Illustrated Medical Dictionary 1661 (31st ed. 2007)).

1  November 22, 2008 and March 22, 2010.  Id. 610.  He noted that in the span of two years,

2  plaintiff's quality of life has "seriously deteriorated," that plaintiff "is having a great deal of

3  difficulty doing lifting, carrying, pushing, pulling, reaching and grasping activities, and is also

4  having trouble walking and climbing stairs."  Id.  Dr. Kaplan discussed plaintiff's neck pain and

5  upper extremity discomfort, which was exacerbated by the March 2008 motor vehicle accident.

6  Id. 610-11.  A physical examination of plaintiff revealed that "[f]ine and gross motor coordination

7  was reduced in all four limbs to finger-finger, finger-nose and heel-toe activities."  Id. 611.

8  Range of motion, sensation, manual muscle tests, and specialized neurological testing revealed

9  abnormal objective findings, including, inter alia, reduced range of motion of the lumbar and

10  cervical spine and reduced sensation and strength in the back.  Id. 612.  Dr. Kaplan also

11  performed an electromyography on plaintiff and interpreted the results himself.  Id.  In his

12  December 18, 2008 report, Dr. Kaplan noted that plaintiff was made permanent and stationary as

13  of November 22, 2008.  See id. 613.  "However, in view of the cervical progressions, . . . for the

14  cervical spine and bilateral upper extremities, the patient is temporarily totally disabled as of the

15  original date of injury of 4/25/06, to the present."  Id.  Dr. Kaplan then diagnosed plaintiff with

16  (1) cervical spine disc syndrome with strain/sprain disorder and bilateral polyradiculopathy, and

17  (2) lumbosacral spine disc syndrome with strain/sprain disorder, bilateral polyradiculopathy and

18  cauda equina syndrome.  Id. 613.  He determined that he would need to reevaluate plaintiff after a

19  new MRI of her cervical spine.  Id. 614.

20       On September 28, 2010, Dr. Kaplan issued a supplemental report following review of an

21  August 31, 2010 MRI.  AR 628-30.  Dr. Kaplan determined that the objective findings on the

22  MRI were consistent with the objective findings on physical examination and electrodiagnosis

23  performed on April 23, 2010, all consistent mostly with right C6 radiculopathy.  Id. 628-29.  Dr.

24  Kaplan changed plaintiff's disability status to "permanent and stationary in the cervical spine and

25  bilateral upper extremities" as of September 10, 2010, and "temporarily totally disabled" from

26  April 25, 2006 through September 10, 2010.  Id. 629.  Dr. Kaplan specifically noted that "[i]t is

27  clear from the electrodiagnostic study and from the objective findings on clinical examination that

28  this patient has lost significant control of the hands and the feet" and "this patient needs help

every day." Id. "With the loss of significant control of the hands and feet, this patient is in fact completely and totally disabled . . . ." Id. 630.

### b. Opinion of Examining Physician Dr. Feng Bai

On February 18, 2009, State agency examining physician Dr. Feng Bai conducted a complete orthopedic evaluation of plaintiff. AR 447-52. In preparing his report, Dr. Bai relied on the November 22, 2008 QME report prepared by Dr. Kaplan, a nerve conduction study reported on December 18, 2008, and the September 18, 2008 MRI report. Id. 447. Dr. Bai noted that plaintiff was taking medication for pain and depression, including morphine, Percocet and Zoloft. Id. 448. Dr. Bai observed plaintiff to be sitting comfortably without difficulty, getting on and off the examining table without difficulty, and ambulating with small gait and slow movement though without any assistive devices. Id. 449. While Dr. Bai found limitations as to plaintiff's range of motion for her neck and back, he noted full range of motion in her upper and lower extremities. Id. Dr. Bai's impression was that plaintiff's symptoms and physical examination are consistent with lumbar spine degenerative disc disease with right radicular pain. Id. Based on the examination, Dr. Bai opined that plaintiff

> is able to carry and lift 20 pounds occasionally and 10 pounds frequently, able to stand and walk up to six hours of an eight-hour workday and sit for six hours of an eight-hour workday. No pushing or pulling limitation other than carrying and lifting. She does have posture limitations due to low back pain and she is able to do occasional climbing, stooping, kneeling, and crouching. She should avoid climbing ladders due to low back pain. She has no manipulative limitations in bilateral extremities for reaching all directions doing gross and fine manipulation. No vision, communicative, or environmental limitations.

AR 452.

### c. Opinions of State Agency Medical Consultants

On March 19, 2009, State agency medical consultant Dr. Paul Frye issued a report on review of plaintiff's medical records, including (1) a June 7, 2006 MRI of the lumbar spine that revealed "[m]ild disk disease producing significant right-sided foraminal narrowing at L3-L4 and left sided foraminal narrowing at L4-L5," see AR 273-74; (2) a September 26, 2006 physical therapy report noting that plaintiff is "demonstrating lumbosacral-pelvic irritability with referral

8

into the right lower extremity," see AR 271; (3) an October 23, 2008 medical progress note from Kaiser Permanente noting plaintiff's complaints of, inter alia, low back pain, shoulder pain, and chronic neck pain (though "this does not much bother her at all"), AR 397-404; (4) Dr. Bai's February 18, 2009 report; and (5) a March 2, 2009 report issued by a Stage agency psychiatric consultant, see AR 455-57. AR 464-66. On review of these records, Dr. Frye noted that plaintiff's complaints are inconsistent with her EMG and MRI findings and determined that plaintiff is capable of "a Light RFC." Id. 466.

On August 31, 2009, State agency medical consultant Dr. G. Jansen prepared a Case Analysis on review of plaintiff's medical records, including the opinion of Dr. Frye. AR 571-73. Dr. Jansen confirmed the assessment of Dr. Frye that plaintiff is capable of "light RFC." Id. 572.

2. The ALJ's Residual Functional Assessment

The ALJ found plaintiff's residual functional capacity to be as follows: she "is able to work at jobs involving simple routine tasks, while being able to sit, stand and/or walk about 6 hours each during an 8-hour workday, and able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. The claimant can never climb ladders, ropes or scaffolds." AR 11. In so finding, the ALJ relied on multiple portions of the record, including the report of consultative orthopedist examiner Dr. Feng Bai. The ALJ specifically gave reduced weight to the opinion of plaintiff's treating physician Dr. Kaplan as inconsistent with the findings of Dr. Bai and the State agency medical consultants. Plaintiff argues that this was in error because the ALJ failed to articulate specific and legitimate reasons for not crediting Dr. Kaplan's 2010 opinions as to plaintiff's upper extremity limitations. Plaintiff states the ALJ received these records after the hearing and therefore may not have considered them in issuing his report.

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating physician's opinion is well-supported . . . and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference and the ALJ must consider specific factors in determining the weight it will be given, including (1)

the length of the treatment relationship and the frequency of examination and (2) the nature and extent of the treatment relationship. Id. Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, and (6) other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record. Id.

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725).

Here, the ALJ rejected Dr. Kaplan's opinion regarding plaintiff's loss of control of her hands and feet as inconsistent with the findings of Dr. Bai and the other medical evidence in the record. But Dr. Bai's report was issued on February 18, 2009 following review of medical records focusing almost primarily on plaintiff's lumbar spine. Dr. Kaplan's opinion, on the other hand, was based on a two year familiarity with plaintiff's medical condition, allowing him to see a progressive decline in plaintiff's health. Over one year after Dr. Bai issued his opinion, Dr. Kaplan discussed plaintiff's cervical progression and diagnosed her with both a lumbar and cervical spinal disorder. Then, on September 28, 2010, seventeen months after Dr. Bai's report, Dr. Kaplan issued a supplemental report following a physical examination and review of an August 31, 2010 MRI revealing a decline in plaintiff's lumbar and cervical spine, resulting in loss of significant control of both the hands and feet.

The Commissioner contends that the ALJ was not required to accept Dr. Kaplan's disability assessment and further argues that Dr. Kaplan's assessment of plaintiff's condition under the workers' compensation system is not binding on the Commissioner. While the Commissioner is correct that the ALJ was not required to accept Dr. Kaplan's disability

assessment, see Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability") (citation omitted), "the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

The Commissioner next proceeds to review the medical evidence that would support the ALJ's rejection of Dr. Kaplan's opinion. But the court is required to review the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA, 554 F.3d 1219, 1225 (9th Cir. 2009). Here, the ALJ rejected Dr. Kaplan's opinion as follows: "Dr. Kaplan's opinion is given reduced weight as it is inconsistent with the findings of Dr. Bai, and the State agency medical consultants, as well as the substantial evidence of record showing no loss of significant control of the hands and feet as noted by Dr. Kaplan." AR 14. The ALJ, though, did not refer to the medical records that the Commissioner cites in its moving papers, compare AR 12-14 with Def.'s Mot. Summ. J. 10-11; fails to discuss the August 31, 2010 MRI that led Dr. Kaplan to supplement his own earlier opinion; fails to explain why the electromyogram and nerve conduction studies performed by Dr. Kaplan do not constitute substantial evidence; and fails to explain why Dr. Kaplan's treatment of plaintiff over a two-year period, which enabled him to see a progressive decline in plaintiff's condition, is insufficient as compared to the much earlier opinions of an examining physician and two State agency consulting physicians. The Commissioner's post hoc explanations, even if correct, are insufficient to cure the ALJ's error. On remand, the ALJ must reassess Dr. Kaplan's opinion regarding plaintiff's functional limitations.

B.     The ALJ's Credibility Determination

Plaintiff also argues that the ALJ failed to articulate adequate reasons for discrediting her testimony and the testimony of her brother. Because the issue of Dr. Kaplan's opinion as to plaintiff's functional limitations remains unsettled and because the ALJ's assessment of plaintiff's

credibility is inherently linked to her functional limitations, the court declines to proceed further with its analysis at this time. The ALJ may reconsider the credibility issues in light of Dr. Kaplan's opinion.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied; and

3. This action is remanded for further proceedings consistent with this opinion.

DATED: September 19, 2013

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;mcsp0357.ss.remand