1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BONNIE DENE McSPARREN,                 No.  2:12-cv-0357 AC

12            Plaintiff,

13        v.                                ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
16            Defendant.

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying her application for a period of disability and disability insurance

19   benefits (DIB) under Title II of the Social Security Act ("the Act"), and Supplemental Security

20   Income ("SSI") under Title XVI of the Act.  The parties' cross-motions for summary judgment

21   are pending.  For the reasons discussed below, the court will grant plaintiff's motion for summary

22   judgment and will deny defendant's motion for summary judgment.

23                          PROCEDURAL BACKGROUND

24        Plaintiff filed an application for DIB and SSI on December 15, 2008, alleging disability

25   beginning October 3, 2008.  Administrative Record ("AR") 121-31.  Both applications were

26   initially denied on April 16, 2009, and again upon reconsideration on September 21, 2009.  AR

27   53-59.  On November 9, 2010, a hearing was held before administrative law judge ("ALJ")

28   Daniel G. Heely.  AR 22-52.  Plaintiff appeared without attorney representation at the hearing, at

                                        1

which she, her brother, and a vocational expert ("VE") testified. Id. In a decision dated December 21, 2010, the ALJ determined that plaintiff was not disabled under sections 216(i), 223(d) of the Act as to her DIB claim and not disabled under section 1614(a)(3)(A) of the Act as to her SSI claim.[1]  AR 8-16.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2.  The claimant has not engaged in substantial gainful activity

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq.  This requires determination of whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:   Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?   If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2

1    since October 3, 2008, the alleged onset date.

2    3.   The   claimant   has   the   following   severe   impairments:
     Degenerative disc disease and depression.

3

4    4.  The claimant does not have an impairment or combination of
     impairments that meets or medically equals one of the listed
     impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5

6    5.   After careful consideration of the entire record, the undersigned
     finds that the claimant has the residual functional capacity to
     perform a wide range of light work as defined 20 CFR 404.1567(a)

7    and 416.967(b).   She is able to work at jobs involving simple
     routine tasks, while being able to sit, stand and/or walk about 6

8    hours each during an 8-hour workday, and able to lift and/or carry
     20 pounds occasionally and 10 pounds frequently.  The claimant

9    can never climb ladders, ropes or scaffolds.

10   6.   The claimant is unable to perform past relevant work

11   7.   The claimant was born on July 28, 1962 and was 46 years old,
     which is defined as a younger individual age 18-49, on the alleged

12   disability onset date.

13   8.   The claimant has at least a high school education and is able to
     communicate in English.

14

15   9.   Transferability of job skills is not material to the determination
     of disability because using the Medical-Vocational Rules as a
     framework supports a finding that the claimant is "not disabled,"

16   whether or not the claimant has transferable job skills.

17   10. Considering the claimant's age, education, work experience,
     and residual functional capacity, there are jobs that exist in

18   significant numbers in the national economy that the claimant can
     perform.

19

20   11.  The claimant has not been under a disability, as defined in the
     Social Security Act, from October 3, 2008, through the date of this
     decision.

21

22   AR 10-16.

23        Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council

24   denied review on December 29, 2011, leaving the ALJ's decision as the final decision of the

25   Commissioner of Social Security.  AR 1-4.

26                              FACTUAL BACKGROUND

27        Born on July 28, 1962, plaintiff was 46 years old on the alleged onset date of disability,

28   AR 121, and 48 years old at the time of the administrative hearing, see AR 8.  Plaintiff is a high

                                        3

1   school graduate and last worked as a certified nursing assistant.  AR 35.  In April 2006, plaintiff

2   fell on a slippery floor while at work.  AR 36.  In March 2008, plaintiff was involved in a motor

3   vehicle accident.  AR 624.  Plaintiff alleges disability beginning on October 3, 2008.  AR 121.

4                                              LEGAL STANDARDS

5              The Commissioner's decision that a claimant is not disabled will be upheld if the findings

6   of fact are supported by substantial evidence in the record and the proper legal standards were

7   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

8   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

9   180 F.3d 1094, 1097 (9th Cir. 1999).

10             The findings of the Commissioner as to any fact, if supported by substantial evidence, are

11  conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

12  more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

13  Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

14  conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

15  N.L.R.B., 305 U.S. 197, 229 (1938)).

16             "The ALJ is responsible for determining credibility, resolving conflicts in medical

17  testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

18  (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

19  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  Thomas v.

20  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

21                                                 DISCUSSION

22             Plaintiff argues that the ALJ erred by (a) failing to articulate specific and legitimate

23  reasons for not crediting the opinion of a treating physician, Dr. Paul E. Kaplan, and (b) failing to

24  articulate clear and convincing reasons for discrediting plaintiff's testimony and failing to

25  articulate any reasons for discrediting the testimony of plaintiff's brother.

26  A.      Opinion of Treating Physician, Dr. Paul E. Kaplan

27             Plaintiff first argues that the ALJ erred in rejecting the opinion of treating physician Dr.

28  Paul E. Kaplan as to plaintiff's upper extremity limitations.  The Commissioner, in turn, argues

                                                    4

that substantial evidence supports the ALJ's evaluation of the medical evidence.

      1.      The Relevant Medical Record

          a.      Overview of Plaintiff's Medical Records

In April 2006, plaintiff fell on a slippery floor while at work.  After the fall, plaintiff complained of lower back pain and received physical therapy treatment in 2006 and 2008, AR 255-72, 313-18; obtained an MRI of her lumbar spine on June 7, 2006, which revealed mild disk disease, AR 272; received treatment at Kaiser Permanente from October 2007 to December 2008 for lower back and neck pain, AR 276-418; and received acupuncture treatment, AR 350.[2]

On March 14, 2008, plaintiff was involved in a motor vehicle accident, which resulted in pain in her neck and lower back, radiating to both shoulders and to her right lower extremities. AR 288.  Soon after the accident, plaintiff complained of pain radiating to her fingers and extreme tenderness to palpation in her neck muscles.  AR 292, 298, 304, 308.  An April 15, 2008 physical exam revealed 5/5 strength throughout all extremities with intact sensation to light touch and pinprick in all extremities except decreased pinprick entire left arm.  AR 305.  The examining doctor noted that plaintiff's "numbness of the left arm is isolated and may be secondary to her pain issues which are still significant."  Id.

          b.      Opinion of Treating Physician Dr. Paul Kaplan

             i.      2008 Reports

Dr. Kaplan examined plaintiff on multiple occasions in the context of a worker's compensation claim.  He first examined plaintiff on May 17, 2008, the results of which are included in a June 14, 2008 Qualified Medical Evaluation report.  See AR 621-27.  That report focused on plaintiff's back and neck injuries following the April 25, 2006 workplace fall and the March 13, 2008 motor vehicle accident.  Following testing, Dr. Kaplan observed abnormal findings related primarily to plaintiff's back and determined that she suffers from a cauda spinal lesion with bilateral polyradiculopathy.  AR 625.  Dr. Kaplan diagnosed plaintiff with

---

[2] Although irrelevant to the analysis herein, plaintiff also complained of and received treatment for depression.

1  lumbosacral disc syndrome, with associated strain / sprain disorder and cauda equina syndrome[3].

2  Id. 626.  He also determined that plaintiff needs to have a weight-bearing MRI of her lumbar

3  spine and stated his intent to reexamine her afterward.  Id. 626-27.

4       On November 22, 2008, Dr. Kaplan completed a Qualified or Agreed Medical Evaluator's

5  Findings Summary Form, in which he noted that plaintiff is permanently disabled, that work

6  caused or contributed to the injury, that her condition is stable and not likely to improve, and that

7  the plaintiff could not return to her usual job.  AR 486.  Dr. Kaplan's diagnosis was "LS spine

8  disc syndrome."  Id.

9       On December 18, 2008, Dr. Kaplan reevaluated plaintiff following review of his June 14,

10  2008 report and a September 18, 2008 MRI report.  AR 480-84.  A full neuromusculoskeletal

11  evaluation revealed intact fine and gross motor coordination, an antalgic gait, and acute and

12  chronic pain.  Id. 481.  Dr. Kaplan determined that there is evidence consistent with spinal nerve

13  root entrapment, which is bilateral and as one would expect in a cauda equine type lesion.  Id.  Dr.

14  Kaplan diagnosed plaintiff with lumbosacral disc syndrome, with associated strain / sprain

15  disorder and cauda equine syndrome.  Id. 482.  He determined that plaintiff's injuries are

16  permanent and stationary as of November 22, 2008.  Id.  He noted that plaintiff has constant

17  moderate pain, that she needs to see a physical therapist at least four to six times a year, and that

18  she is not a good candidate for either invasive or surgical procedure due to the number of

19  abnormal discs on MRI.  Id. 484.

20             ii.     2010 Reports

21       Dr. Kaplan reevaluated plaintiff on April 23, 2010, and discussed his findings in a May 8,

22  2010 Qualified Medical Reevaluation report.  AR 608-14.  Before the examination, Dr. Kaplan

23  reviewed numerous reports, most of which focused on plaintiff's lower back area.  See id. 609-10.

24  Dr. Kaplan also reviewed plaintiff's questionnaires regarding Activities of Daily Living, dated

25

26  [3] "Cauda equine refers to the collection of spinal roots that descend from the lower part of the
   spinal cord and occupy the vertebral canal below the cord and their appearance resembles the tail

27  of a horse."  Pl.'s Mot. Summ. J. at 4 n.11 (citing Dorland's Illustrated Medical Dictionary 1661
   (31st ed. 2007)).

28

November 22, 2008 and March 22, 2010.  Id. 610.  He noted that in the span of two years,
plaintiff's quality of life has "seriously deteriorated," that plaintiff "is having a great deal of
difficulty doing lifting, carrying, pushing, pulling, reaching and grasping activities, and is also
having trouble walking and climbing stairs."  Id.  Dr. Kaplan discussed plaintiff's neck pain and
upper extremity discomfort, which was exacerbated by the March 2008 motor vehicle accident.
Id. 610-11.  A physical examination of plaintiff revealed that "[f]ine and gross motor coordination
was reduced in all four limbs to finger-finger, finger-nose and heel-toe activities."  Id. 611.
Range of motion, sensation, manual muscle tests, and specialized neurological testing revealed
abnormal objective findings, including, inter alia, reduced range of motion of the lumbar and
cervical spine and reduced sensation and strength in the back.  Id. 612.  Dr. Kaplan also
performed an electromyography on plaintiff and interpreted the results himself.  Id.  In his
December 18, 2008 report, Dr. Kaplan noted that plaintiff was made permanent and stationary as
of November 22, 2008.  See id. 613.  "However, in view of the cervical progressions, . . . for the
cervical spine and bilateral upper extremities, the patient is temporarily totally disabled as of the
original date of injury of 4/25/06, to the present."  Id.  Dr. Kaplan then diagnosed plaintiff with
(1) cervical spine disc syndrome with strain/sprain disorder and bilateral polyradiculopathy, and
(2) lumbosacral spine disc syndrome with strain/sprain disorder, bilateral polyradiculopathy and
cauda equina syndrome.  Id. 613.  He determined that he would need to reevaluate plaintiff after a
new MRI of her cervical spine.  Id. 614.

On September 28, 2010, Dr. Kaplan issued a supplemental report following review of an
August 31, 2010 MRI.  AR 628-30.  Dr. Kaplan determined that the objective findings on the
MRI were consistent with the objective findings on physical examination and electrodiagnosis
performed on April 23, 2010, all consistent mostly with right C6 radiculopathy.  Id. 628-29.  Dr.
Kaplan changed plaintiff's disability status to "permanent and stationary in the cervical spine and
bilateral upper extremities" as of September 10, 2010, and "temporarily totally disabled" from
April 25, 2006 through September 10, 2010.  Id. 629.  Dr. Kaplan specifically noted that "[i]t is
clear from the electrodiagnostic study and from the objective findings on clinical examination that
this patient has lost significant control of the hands and the feet" and "this patient needs help

1    every day." Id. "With the loss of significant control of the hands and feet, this patient is in fact

2    completely and totally disabled . . . ." Id. 630.

3                        b.        Opinion of Examining Physician Dr. Feng Bai

4            On February 18, 2009, State agency examining physician Dr. Feng Bai conducted a

5    complete orthopedic evaluation of plaintiff.  AR 447-52.  In preparing his report, Dr. Bai relied

6    on the November 22, 2008 QME report prepared by Dr. Kaplan, a nerve conduction study

7    reported on December 18, 2008, and the September 18, 2008 MRI report.  Id. 447.  Dr. Bai noted

8    that plaintiff was taking medication for pain and depression, including morphine, Percocet and

9    Zoloft.  Id. 448.  Dr. Bai observed plaintiff to be sitting comfortably without difficulty, getting on

10   and off the examining table without difficulty, and ambulating with small gait and slow

11   movement though without any assistive devices.  Id. 449.  While Dr. Bai found limitations as to

12   plaintiff's range of motion for her neck and back, he noted full range of motion in her upper and

13   lower extremities.  Id.  Dr. Bai's impression was that plaintiff's symptoms and physical

14   examination are consistent with lumbar spine degenerative disc disease with right radicular pain.

15   Id.  Based on the examination, Dr. Bai opined that plaintiff

16                     is able to carry and lift 20 pounds occasionally and 10 pounds
                       frequently, able to stand and walk up to six hours of an eight-hour
17                     workday and sit for six hours of an eight-hour workday. No pushing
                       or pulling limitation other than carrying and lifting. She does have
18                     posture limitations due to low back pain and she is able to do
                       occasional climbing, stooping, kneeling, and crouching. She should
19                     avoid climbing ladders due to low back pain. She has no
                       manipulative limitations in bilateral extremities for reaching all
20                     directions doing gross and fine manipulation. No vision,
                       communicative, or environmental limitations.
21

22   AR 452.

23                        c.        Opinions of State Agency Medical Consultants

24           On March 19, 2009, State agency medical consultant Dr. Paul Frye issued a report on

25   review of plaintiff's medical records, including (1) a June 7, 2006 MRI of the lumbar spine that

26   revealed "[m]ild disk disease producing significant right-sided foraminal narrowing at L3-L4 and

27   left sided foraminal narrowing at L4-L5," see AR 273-74; (2) a September 26, 2006 physical

28   therapy report noting that plaintiff is "demonstrating lumbosacral-pelvic irritability with referral

1   into the right lower extremity," see AR 271; (3) an October 23, 2008 medical progress note from

2   Kaiser Permanente noting plaintiff's complaints of, inter alia, low back pain, shoulder pain, and

3   chronic neck pain (though "this does not much bother her at all"), AR 397-404; (4) Dr. Bai's

4   February 18, 2009 report; and (5) a March 2, 2009 report issued by a Stage agency psychiatric

5   consultant, see AR 455-57.  AR 464-66.  On review of these records, Dr. Frye noted that

6   plaintiff's complaints are inconsistent with her EMG and MRI findings and determined that

7   plaintiff is capable of "a Light RFC."  Id. 466.

8           On August 31, 2009, State agency medical consultant Dr. G. Jansen prepared a Case

9   Analysis on review of plaintiff's medical records, including the opinion of Dr. Frye.  AR 571-73.

10  Dr. Jansen confirmed the assessment of Dr. Frye that plaintiff is capable of "light RFC."  Id. 572.

11          2.      The ALJ's Residual Functional Assessment

12          The ALJ found plaintiff's residual functional capacity to be as follows: she "is able to

13  work at jobs involving simple routine tasks, while being able to sit, stand and/or walk about 6

14  hours each during an 8-hour workday, and able to lift and/or carry 20 pounds occasionally and 10

15  pounds frequently. The claimant can never climb ladders, ropes or scaffolds."  AR 11.  In so

16  finding, the ALJ relied on multiple portions of the record, including the report of consultative

17  orthopedist examiner Dr. Feng Bai.  The ALJ specifically gave reduced weight to the opinion of

18  plaintiff's treating physician Dr. Kaplan as inconsistent with the findings of Dr. Bai and the State

19  agency medical consultants.  Plaintiff argues that this was in error because the ALJ failed to

20  articulate specific and legitimate reasons for not crediting Dr. Kaplan's 2010 opinions as to

21  plaintiff's upper extremity limitations.  Plaintiff states the ALJ received these records after the

22  hearing and therefore may not have considered them in issuing his report.

23          "By rule, the Social Security Administration favors the opinion of a treating physician

24  over non-treating physicians."  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).  "If a treating

25  physician's opinion is well-supported . . . and is not inconsistent with the other substantial

26  evidence in [the] case record, [it will be given] controlling weight."  Id.  Even if a treating

27  physician's opinion is not given controlling weight, the opinion is still entitled to deference and

28  the ALJ must consider specific factors in determining the weight it will be given, including (1)

1    the length of the treatment relationship and the frequency of examination and (2) the nature and

2    extent of the treatment relationship.  Id.  Additional factors relevant in evaluating the weight of

3    any medical opinion, not just treating physician opinions, include: (3) the amount of relevant

4    evidence that supports the opinion and the quality of the explanation provided, (4) the consistency

5    of the medical opinion with the record as a whole, (5) the specialty of the physician providing the

6    opinion, and (6) other factors such as the degree of understanding a physician has of Social

7    Security disability programs and their evidentiary requirements and the physician's familiarity

8    with other information in the record.  Id.

9         If a treating physician's opinion is not contradicted by another doctor, it may only be

10   rejected for clear and convincing reasons supported by substantial evidence.  Orn, 495 F.3d at 632

11   (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)).  Even if the treating physician's

12   opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific

13   and legitimate reasons supported by substantial evidence.  Id. (quoting Reddick, 157 F.3d at 725).

14        Here, the ALJ rejected Dr. Kaplan's opinion regarding plaintiff's loss of control of her

15   hands and feet as inconsistent with the findings of Dr. Bai and the other medical evidence in the

16   record.  But Dr. Bai's report was issued on February 18, 2009 following review of medical

17   records focusing almost primarily on plaintiff's lumbar spine.  Dr. Kaplan's opinion, on the other

18   hand, was based on a two year familiarity with plaintiff's medical condition, allowing him to see

19   a progressive decline in plaintiff's health.  Over one year after Dr. Bai issued his opinion, Dr.

20   Kaplan discussed plaintiff's cervical progression and diagnosed her with both a lumbar and

21   cervical spinal disorder.  Then, on September 28, 2010, seventeen months after Dr. Bai's report,

22   Dr. Kaplan issued a supplemental report following a physical examination and review of an

23   August 31, 2010 MRI revealing a decline in plaintiff's lumbar and cervical spine, resulting in loss

24   of significant control of both the hands and feet.

25        The Commissioner contends that the ALJ was not required to accept Dr. Kaplan's

26   disability assessment and further argues that Dr. Kaplan's assessment of plaintiff's condition

27   under the workers' compensation system is not binding on the Commissioner.  While the

28   Commissioner is correct that the ALJ was not required to accept Dr. Kaplan's disability

1  assessment, see Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating

2  physician's opinion is generally afforded the greatest weight in disability cases, it is not binding

3  on an ALJ with respect to the existence of an impairment or the ultimate determination of

4  disability") (citation omitted), "the ALJ may not disregard a physician's medical opinion simply

5  because it was initially elicited in a state workers' compensation proceeding." Booth v. Barnhart,

6  181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002).

7      The Commissioner next proceeds to review the medical evidence that would support the

8  ALJ's rejection of Dr. Kaplan's opinion.  But the court is required to review the ALJ's decision

9  "based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations

10 that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of SSA,

11 554 F.3d 1219, 1225 (9th Cir. 2009).  Here, the ALJ rejected Dr. Kaplan's opinion as follows:

12 "Dr. Kaplan's opinion is given reduced weight as it is inconsistent with the findings of Dr. Bai,

13 and the State agency medical consultants, as well as the substantial evidence of record showing

14 no loss of significant control of the hands and feet as noted by Dr. Kaplan." AR 14.  The ALJ,

15 though, did not refer to the medical records that the Commissioner cites in its moving papers,

16 compare AR 12-14 with Def.'s Mot. Summ. J. 10-11; fails to discuss the August 31, 2010 MRI

17 that led Dr. Kaplan to supplement his own earlier opinion; fails to explain why the

18 electromyogram and nerve conduction studies performed by Dr. Kaplan do not constitute

19 substantial evidence; and fails to explain why Dr. Kaplan's treatment of plaintiff over a two-year

20 period, which enabled him to see a progressive decline in plaintiff's condition, is insufficient as

21 compared to the much earlier opinions of an examining physician and two State agency

22 consulting physicians.  The Commissioner's post hoc explanations, even if correct, are

23 insufficient to cure the ALJ's error.  On remand, the ALJ must reassess Dr. Kaplan's opinion

24 regarding plaintiff's functional limitations.

25 B.    The ALJ's Credibility Determination

26      Plaintiff also argues that the ALJ failed to articulate adequate reasons for discrediting her

27 testimony and the testimony of her brother.  Because the issue of Dr. Kaplan's opinion as to

28 plaintiff's functional limitations remains unsettled and because the ALJ's assessment of plaintiff's

11

1  credibility is inherently linked to her functional limitations, the court declines to proceed further

2  with its analysis at this time. The ALJ may reconsider the credibility issues in light of Dr.

3  Kaplan's opinion.

CONCLUSION

5  Accordingly, IT IS HEREBY ORDERED that:

6  1. Plaintiff's motion for summary judgment is granted;

7  2. The Commissioner's cross-motion for summary judgment is denied; and

8  3. This action is remanded for further proceedings consistent with this opinion.

9  DATED: September 19, 2013

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;mcsp0357.ss.remand

12